UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTOPHER MICHAEL GAGE,<br><br>Defendant. | Case No. 2:19-cr-00016-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Defendant Christopher Gage's Motion to Suppress. Dkt. 22. The Government responded to Gage's motion (Dkt. 24), but Gage did not reply. The Court held oral argument on September 4, 2019, and took the matter under advisement.

For the reasons set forth below, the Court DENIES Gage's Motion.

## II. BACKGROUND

On May 2, 2018, law enforcement officers were dispatched to a house near highway 95 in Worley, Idaho, to apprehend Edward Fasthorse, who had an outstanding arrest warrant. Residents of the house explained that Fasthorse was not there, but had fled on foot. Officer Jason Robinson—along with other officers—looked for Fasthorse in a field near the residence. After Fasthorse was located and arrested, Officer Robinson began walking back to his patrol vehicle. A group of individuals were standing near a vehicle

parked outside the residence near what has been described as a carport or shed. Officer Robinson noticed Donnovan[1] George—a person he had contacted in the past and knew to be involved in the use and sale of drugs—standing near the vehicle. Officer Robinson also saw drug paraphernalia (including aluminum foil pieces and butane torches) scattered on the ground around the vehicle. Officer Robinson approached the individuals.

After determining George was the owner of the vehicle by running it through dispatch, Officer Robinson asked George for consent to search the vehicle. George consented to the search.

As he began his search of the vehicle, Officer Robinson observed a black backpack[2] on the front passenger seat, with open pockets. A small butane torch was visible in the backpack. Also visible was a container filled with a brown liquid, which Officer Robinson believed was consistent with drugs in a liquid form.

Before searching the backpack, Officer Robinson asked the group standing around the vehicle who owned the backpack. Christopher Gage spoke up, but denied ownership, claiming instead that he found the backpack in a dumpster. Officer Robinson asked which dumpster, and Gage claimed he took the backpack from a dumpster at the Sun Up Bay dumpsite. Officer Robinson explained—and Gage then acknowledged—that it was illegal to remove items from dumpsters at the Sun Up Bay dumpsite.

Inside the backpack, Officer Robinson discovered:

---

[1] Gage spells this individual's name "Donovan" in his briefs, while the Government uses "Donnovan."

[2] Officer Robinson does not recall if he noticed the backpack before or after he opened the passenger door. This detail does not affect the Court's analysis today.

MEMORANDUM DECISION AND ORDER – 2

1. A black case with a spoon, a clear bag with crystal substance, a used syringe, a syringe with black liquid, and bag of unused syringes;

2. Two pairs of female toddler underwear;

3. A black Verizon tablet computer (later determined to contain child pornography upon examination by a forensic examiner);

4. A Samsung Galaxy cell phone (later determined to contain animated pictures of a young female child engaged in sexual acts);

5. A bathroom supply bag with bathroom supplies and small plastic baggies containing crystal residue; and

6. A metal notebook bearing the Defendant's first initials and last name ("C.M. Gage") on its side.

Gage asks the Court to suppress all evidence seized as a result of Officer Robinson's search of the car and backpack.

### III. LEGAL STANDARD

"The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273 (2002). "[T]here is 'no ready test for determining reasonableness other than by balancing the need to search (or seize) against the invasion which the search (or seizure) entails.'" *Terry v. Ohio*, 392 U.S. 1, 21 (1968).

Generally, "searches and seizures conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth

Amendment—subject only to a few specifically established and well delineated exceptions." *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993). Importantly, "a search conducted pursuant to a valid consent is constitutionally permissible." *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973).

## IV. ANALYSIS

Gage moves the Court to suppress all evidence seized, claiming the Government recovered the evidence unreasonably, contrary to the Fourth Amendment. The Government begins by arguing that Gage does not have standing to challenged either search because 1) Gage did not own the vehicle and 2) Gage gave up any expectation of privacy in the backpack and its contents by disclaiming ownership of the backpack.

The Government also argues that even if Gage had standing, the searches of the vehicle and backpack were valid because the owner of the vehicle consented to the search and the automobile exception applies. The Government also argues that no consent was necessary to search the backpack as the owner was unknown and drug paraphernalia was present. The Court will address these arguments in turn.

A. *Standing*

    1. Vehicle

Throughout the briefing (and at oral argument) Gage repeated raises concerns about the search for Fasthorse, how that search was flawed, and its impact on George, Gage, and the vehicle search. In essence, Gage claims this whole event was a "probation search" of Fasthorse gone wrong.

At the outset, the Court notes that Gage does not have standing to object to anything

relative to Fasthorse and the underlying reasons officers were at the residence in question. Gage is not Fasthorse, he does not own the home or property where Fasthorse was located, and he has no connection to Fasthorse's probation. "As we stated in *Alderman v. United States*, 394 U.S. 165, 174 (1969), 'Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted.'" *Rakas v. Illinois*, 439 U.S. 128, 133–34 (1978). The subsequent search of the vehicle was wholly unrelated to Fasthorse. It was never a probationary search. The Court finds no basis for this argument.

Gage likewise does not have standing to object to George's consent to search the vehicle because *it was not his vehicle.* Again, Fourth Amendment rights cannot be vicariously asserted. *See id.*

3. Backpack

Turning to the backpack, the Court notes that Gage gave up his right (i.e. lacks standing) to challenge the search of the backpack—and to suppress the subsequent evidence—when he disclaimed ownership in the backpack itself.

After discovering the backpack in the car, Officer Robinson attempted to ascertain who owned the bag. Gage specifically spoke up and indicated that it did not belong to any of them, that he found it in a dumpster, and that he did not know its contents. In so doing, Gage "gave up any expectation of privacy in the backpack by unequivocally disclaiming ownership." *United States v. Decoud*, 456 F.3d 996, 1007 (9th Cir. 2006).

A person who tells police the property to be searched does not belong to them, cannot subsequently complain about its search and seizure. *United States v. Karo*, 468 U.S. 705, 725 (1984) ("When a person has no privacy interest whatsoever in a particular

container, place, or conversation . . . Fourth Amendment analysis is straightforward—the person lacks standing to suppress the evidence obtained. . . ."). *See also United States v. Denny*, 441 F.3d 1220, 1229 (10th Cir. 2006) ("because Defendant abandoned the [bag] and its contents, he had no standing to object to [the officer's] search."); *United States v. Ruiz,* 935 F.2d 982, 984 (8th Cir.1991) (rejecting argument that a disclaimer did not constitute abandonment because the detective knew defendant was lying when he denied ownership).

Accordingly, Gage lost standing to challenge the search of the backpack when he disclaimed ownership of the same.

2. Consent

The above analysis aside, even assuming arguendo that Gage did have standing to object to the search of the vehicle and/or backpack, Officer Robinson still was within his authority to search both because 1) George consented to the search of the vehicle, and 2) consent was unnecessary for the search of the backpack.

1. Vehicle

"[W]e have long approved consensual searches because it is no doubt reasonable for the police to conduct a search once they have been permitted to do so." *Florida v. Jimeno*, 500 U.S. 248, 250–51 (1991) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)).

Simply put, the instant motion turns on consent. If George's consent to have law enforcement search the vehicle was valid, the search was reasonable and the Motion to Suppress must be denied. If George's consent was invalid, the search was unreasonable

and the Motion to Suppress must be granted.

In Gage's Motion to Suppress he makes a conclusory claim that "Discovery provided to date fails to make that showing [that consent was valid]. If the government wishes to make such a showing, it should be required to call witnesses to lay a sufficient evidentiary basis." Dkt. 22, at 10. The Government, however, need not do so because the veracity and validity of George's consent has not been challenged. Gage acknowledges that George verbally consented to a search of the vehicle. "Law enforcement approached Mr. George and asked for consent to search the vehicle. George acquiesced." Dkt. 22, at 3. Gage does not offer any affirmative defenses that would have invalidated George's consent—in fact Gage failed to attack George's consent at all. Under *Jimeno,* George's consent stands. 500 U.S. 248. Gage's conclusory claim to the contrary is insufficient to prevail.

The Court finds George's consent to search the vehicle valid. Accordingly, the fruits of that search were lawfully obtained.

2. Backpack

As it relates to the backpack itself, the Court incorporates its prior discussion regarding Gage and his relinquishing ownership of the backpack. When Gage did this, he not only lost standing to challenge the search, but allowed Officer Robinson to search the backpack without consent. *See, e.g., United States v. Rush*, 890 F.2d 45, 48 (7th Cir. 1989) (finding that police did not need to obtain consent to search a bag after defendant disclaimed ownership of that bag); *United States v. Booker*, 981 F.2d 289, 294 (7th Cir. 1992) (defendant's consent to search of vehicle was irrelevant considering that defendant

disclaimed ownership of the vehicle); *Denny*, 441 F.3d at 1228-29 (police did not need to obtain consent after defendant relinquished ownership of item).

When Officer Robinson received no affirmative response to his inquire concerning who owned the backpack, he was well within his rights to search the backpack without first obtaining consent because he observed that the backpack contained evidence of criminal activity. "The plain view doctrine allows the warrantless seizure of property in plain view when the officer is lawfully on the premises, the incriminating character of the evidence is 'immediately apparent,' and the officer 'has a lawful right of access to the object itself.'" *Weaver v. Multonam Cty.*, 142 F.3d 447 (9th Cir. 1998) (citing *Horton v. California,* 496 U.S. 128, 136-42 (1990)).

3. *Automobile Exception to the Warrant Requirement*

While the Court has already determined that Officer Robinson had consent to search the car and did not need consent to search the backpack, there is a second, independent reason that justifies Officer Robinson's warrantless search of the car and backpack.

At the moment Officer Robinson observed that the backpack within the car contained drug paraphernalia and what he reasonably believed to be drugs, Officer Robinson had authority to search the entire vehicle, including the backpack and other containers, under the automobile exception. The United States Supreme Court has long recognized that a vehicle may be searched by police, without a warrant, where they have probable cause to believe it contains evidence of criminal activity. *United States v. Ross,* 456 U.S. 798, 820-21 (1982); *United States v. Fowlkes,* 804 F.3d 954, 971 (9th Cir. 2015) (recognizing that the "automobile exception" allows police officers "to conduct a

warrantless search of a vehicle if they have probable cause to believe that it contains contraband").

A search under the automobile exception permits a complete search of containers within the vehicle to include "passengers' belongings found in the car that are capable of concealing the object of the search." *Wyoming v. Houghton,* 526 U.S. 295, 307 (1999); *United States v. Williams,* 846 F.3d 303, 312 (9th Cir. 2016) (holding that "[o]fficers may conduct a warrantless search of an automobile, including containers within it, when they have probable cause to believe that the vehicle contains contraband or evidence of criminal activity") (citing *Wyoming*).

Accordingly, even if Gage had standing, and even if George's consent was not valid, the search of the backpack would still be reasonable under the automobile exception because the search of the entire car—and everything in it—was justified. "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *Ross*, 456 U.S. at 825.

Here, George's car was already parked when Officer Robinson arrived. Officer Robinson observed drug paraphernalia on the ground near the vehicle, as well as a butane torch and a liquid the officer believed to be drugs in the backpack inside the vehicle. The Court finds Officer Robinson had probable cause to search the vehicle and the backpack.

Other exceptions may likewise apply in this circumstance,[3] however, for the Court's

---

[3] There are certain "well-delineated exceptions" to the prohibition against warrantless searches. These exceptions include (1) hot pursuit, (2) plain view doctrine, (3) emergency situations, (4) automobile search, (5) consent, and (6) incident to arrest. *United States v. Jamerson*, 549 F.2d 1263, 1270 (9th Cir. 1977).

purposes it is sufficient to note that Officer Robinson had two independent reasons to search the vehicle and the backpack: consent and the automobile exception.

4. Timing

Lastly, the Court wishes to highlight a final argument raised by Gage and why it finds this argument unpersuasive.

Gage alleges that even if this wasn't one continuous event stemming from Fasthorse's probationary problems, Officer Robinson unreasonably and impermissibly delayed or extended the search in order to "make his case."

The Supreme Court has held that officers cannot undertake activities that would otherwise "prolong[] [a] stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." *Rodriguez v. United States*, 135 S. Ct. 1609, 1615 (2015). Reasonable suspicion "exists when an officer is aware of specific, articulable facts which, when considered with objective and reasonable inferences, form a basis for particularized suspicion." *United States v. Montero-Camargo*, 208 F.3d 1122, 1129 (9th Cir. 2000) (en banc).

In this case, Officer Robinson observed drug paraphrenia on the ground around the vehicle and inside the vehicle itself. He had reasonable suspicion sufficient to support the search—even if it subsequently took some time to sort matters out.[4]

---

[4] The Court notes that Gage's actions—lying about his ownership of the backpack, where it came from, etc—are major contributing factors to the length of the search. It took Officer Robinson some time to ascertain the facts and to determine how to proceed. This time was reasonable and necessary.

# V. CONCLUSION

Officer Robinson's actions in this case were lawful and appropriate.

First, Gage lacks standing to challenge the overall search as being improper (as these events are separate from those related to Fasthorse), the search of the car (because George was the sole lawful owner of the vehicle), the search of the backpack (because he disclaimed ownership in the object), and the length of the search (as there were legitimate reasons for the time incurred).

Second, Officer Robinson did not violate the Fourth Amendment when he searched the vehicle because George consented to the search. Likewise, Officer Robinson did not violate the Fourth Amendment when he searched the backpack because, in the absence of clear ownership, he did not need consent to do so.

Third, and most importantly, Officer Robinson had reasonable suspicion that a crime was being committed based upon his observations of drug paraphernalia in and around the vehicle. This "automobile" exception gave Officer Robinson the authority to search the vehicle, and everything within the vehicle—including the backpack—without a warrant.

For all the reasons explained above, Gage's Motion to Suppress must be denied.

///

///

///

///

## VI. ORDER

1. Gage's Motion to Suppress (Dkt. 22) is DENIED.

2. The Court will send out a separate order setting a jury trial in this matter.

DATED: October 28, 2019

David C. Nye
Chief U.S. District Court Judge